EDP:ADW
F.# 2021R00552

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

RASHAWNEE GRAY,

          Defendant.

COMPLAINT AND AFFIDAVIT

(21 U.S.C. §§ 846 and 841)

22-MJ-1263

- - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

      MATTHEW BARTON, being duly sworn, deposes and states that he is a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

      In or about November 2022, within the Eastern District of New York and elsewhere, the defendant RASHAWNEE GRAY, together with others, did knowingly, intentionally, and unlawfully conspire to distribute and possess with intent to distribute one or more controlled substances containing 500 grams or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841.

      (Title 21, United States Code, Sections 846, 841(a), and 841(b)(1)(B)(ii))

      The source of your deponent's information and the grounds for his belief are as follows:

## INTRODUCTION

1.  I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been since 2018. I am assigned to the New York City Border Enforcement Security Task Force, where I investigate narcotics trafficking, and other offenses. I have participated in numerous investigations where I have (a) conducted arrests; (b) conducted physical and wire surveillance; (c) executed search warrants at locations where contraband has been found; (d) reviewed and analyzed numerous taped conversations discussing criminal activity; (e) debriefed cooperating witnesses and other confidential sources; and (f) obtained and reviewed electronic evidence. As a result of my training and experience, I am familiar with the manner in which illegal drugs are imported and distributed, the methods of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE TO ARREST THE DEFENDANT

3.  In about April 2021, HSI received information that an individual located in Colombia (the "Supplier") was looking for help to transport narcotics to the United States. A source of information (the "SOI"), whose identity is known to me, communicated with the Supplier under the direction of law enforcement.[1] The SOI, at the instruction of law enforcement, began

---

[1] The SOI is providing information to U.S. law enforcement authorities in the hope that

to consensually record many of his/her verbal and written communications with the Supplier starting in June 2021. Eventually, an undercover law enforcement agent successfully took delivery of a significant quantity of cocaine from the Supplier, and the cocaine was later transported to the Eastern District of New York. After the cocaine was transported to the Eastern District of New York, and until at least November 2022, the Supplier made ongoing efforts to arrange for transfer of the cocaine to another person in the United States. In November 2022, the Supplier sent the defendant RASHAWNEE GRAY to the Eastern District of New York to meet with and take possession of several kilograms of cocaine from the putative holder of the cocaine, but who was actually another undercover law enforcement agent. For those reasons, as described in more detail below, there is probable cause to believe that the defendant conspired with others to distribute and possess with intent to distribute at least 500 grams of cocaine.

4. At the direction of law enforcement, the SOI consensually recorded his/her phone calls with the Supplier and sent the recordings to law enforcement. The SOI also sent investigators copies of his/her written WhatsApp communications with the Supplier. During those recorded phone calls and written communications, the SOI and the Supplier discussed a plan to take delivery of a large amount of cocaine in Colombia and transport it to the United States.

5. On or about June 18, 2021, the SOI sent law enforcement a photograph of what appeared to be a pressed brick of cocaine. The brick had the numbers "701" stamped backwards onto it.

---

he/she (1) may be eligible to receive a monetary award that is calculated based off of a percentage of any assets seized and/or forfeited by the government in connection with the information provided by the SOI; and (2) may be eligible for certain immigration benefits, such as temporary parole, based on the SOI's assistance.

3

6. Later, the SOI arranged for the Supplier to meet with an undercover law enforcement agent, who the SOI introduced as a co-conspirator willing to transport the cocaine to the United States on behalf of the Supplier and the SOI. On or about July 9, 2021, the undercover agent met with the Supplier in Bogota, Colombia. At that meeting, the Supplier delivered to the undercover agent approximately 11 wrapped bricks, containing about 12.26 kilograms of a powdery substance that later tested positive for cocaine. Upon removing the wrapping of one of the bricks, law enforcement saw that the brick was backwards stamped with the numbers "701," consistent with the appearance of the brick in the picture that the SOI sent on June 18, 2021.

7. On or about July 10, 2021, law enforcement transported the approximately 12.26 kilograms of cocaine from Colombia to the United States, landing at John F. Kennedy International Airport in Queens, New York. Agents later transferred custody of the cocaine to the Drug Enforcement Administration.

8. Despite a substantial period of time passing after the Supplier delivered the cocaine to the undercover agent, the Supplier was patient and did not pressure the SOI to deliver the cocaine to anyone else in the United States for several months. On November 18, 2021, the SOI sent to the Supplier several photographs of the delivered cocaine to reassure the Supplier that the cocaine was secure. The pictures included a newspaper with a date of November 18, 2021. One of the pictures sent by the SOI can be seen as follows:



9.  The SOI later told law enforcement that the Supplier had provided the SOI with a phone number for a person located in New York who could take delivery of the cocaine and provide payment for the transportation coordinated by the SOI. The SOI indicated to the Supplier that the SOI would send an associate—who in actuality would be an undercover law enforcement agent—to meet with the Supplier's associate. In a recorded phone call that took place on or about December 9, 2021, the Supplier asked the SOI if the SOI's associate spoke English. The Supplier also told the SOI that the SOI should not contact the Supplier's associate until the Supplier confirmed the details of a meeting.

10. During another recorded call that took place on or about December 9, 2021, the Supplier told the SOI that during a previous transaction—which I believe, based on the context of the communications, to be a reference to a drug deal— there were communication issues because the Supplier's associate did not speak Spanish. According to the Supplier, his associate had to

call the Supplier during the previous drug deal because the Supplier speaks English. During the recorded phone call, the Supplier and the SOI also discussed payment for the cocaine delivery.

11. In January 2022, law enforcement obtained search warrants to obtain location data for the cell phone belonging to the Supplier's associate. Based on records obtained from the service provider and surveillance of the holder of the cell phone, law enforcement concluded that the Supplier's associate was the defendant RASHAWNEE GRAY.

12. Based on information communicated by the Supplier, law enforcement learned that the defendant RASHAWNEE GRAY might travel near the end of January 2022 to New York City to procure some of the 12.26 kilograms of cocaine that had been transported on behalf of the Supplier. On January 31, 2022, the defendant departed from Buffalo, New York and started traveling towards New York City. That same morning, law enforcement observed the car in which the defendant was riding fail to signal a lane change while the car drove on a highway towards New York City. Law enforcement agents conducted a traffic stop and observed the defendant sitting in the front passenger seat, with the defendant's father driving the car. Law enforcement asked for and received from the defendant's father consent to search the car. Law enforcement found a black backpack inside of the vehicle, which contained approximately $35,000 in cash. When asked, the defendant's father claimed that the money was from his business and was to be used to shop for "our store." The agents subsequently seized the money.

13. The Supplier again attempted to arrange for the defendant RASHAWNEE GRAY to receive some of the imported cocaine in November 2022. Between about November 13, 2022 and November 28, 2022, an undercover law enforcement agent exchanged several recorded phone calls with the Supplier and the defendant RASHAWNEE GRAY. During those calls, the men agreed that on November 28, 2022, the defendant would meet with the undercover agent in

Brooklyn and pick up two kilograms of the cocaine. In addition, on one of the calls, the Supplier indicated that the defendant's vehicle was outfitted with a secret compartment that could be used to store the cocaine.

14. On November 28, 2022, at a location in the Red Hook neighborhood of Brooklyn, New York, the defendant RASHAWNEE GRAY met with the undercover law enforcement agent described in the previous paragraph. The defendant entered the undercover agent's vehicle and spoke briefly. The defendant then went back to his vehicle, retrieved approximately $15,000 in cash, and then returned to the undercover agent's vehicle. After the defendant showed the agent the money, the defendant asked how he was going to "test," which I understand to be a reference to testing that the agent possessed actual cocaine. When the agent said that the defendant could "test" in the agent's vehicle, the defendant expressed reluctance, asking, in some and substance,

whether the agent had a private location where they could continue the meeting. Law enforcement then arrested the defendant.

WHEREFORE, your deponent respectfully requests that the defendant RASHAWNEE GRAY be dealt with according to law.

Dated: Brooklyn, New York
       November 29, 2022

_____
MATTHEW BARTON
Special Agent
U.S. Department of Homeland Security,
Homeland Security Investigations

Sworn to before me this 29th day of November, 2022

_____
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK